STATE OF NEBRASKA, APPELLEE, V. LYNN ANN SPAULDING, APPELLANT.
319 N.W.2d 449

Filed May 14, 1982. No. 44524.

Dennis R. Keefe, Lancaster County Public Defender, and Michael D. Gooch, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, WHITE, HASTINGS, and CAPORALE, JJ.

BOSLAUGH, J.

The defendant, Lynn Ann Spaulding, was convicted of obtaining "property, services, or present value of any kind" by issuing an insufficient fund check and was sentenced to 2 years' probation. She has appealed and contends the evidence was insufficient to support the judgment; documentary evidence was erroneously admitted at the trial; and the trial court erred in failing to give three requested instructions.

The defendant maintained accounts in both the First National Bank, Lincoln, Nebraska, and the

Government Employees Credit Union, Lincoln, Nebraska. On July 27, 1979, the defendant deposited in her account at the bank a draft drawn on her account in the credit union in the amount of $600. This item was credited to her account but was dishonored and returned unpaid. It was returned to the bank on August 6, 1979, and charged back against her account. In the interim it had been recorded as a credit in her bank account.

The evidence shows the defendant was engaged in a "kiting" scheme whereby checks against the bank account were covered by drafts against the credit union account, and drafts against the credit union account were covered by checks against the bank account. The net result of the scheme, so far as the bank was concerned, was an overdrawn balance of $1,120.75 on August 24, 1979.

The defendant was charged with violating Neb. Rev. Stat. § 28-611(1) (Reissue 1979), which requires proof that the defendant obtained "property, services, or present value of any kind" by issuing or passing the check. The defendant contends that the definition of value contained in Neb. U.C.C. § 3-303 (Reissue 1980) is applicable and establishes that the defendant did not receive value or "present value" for the $600 draft deposited in the bank on July 27, 1979.

The State contends that the definition of "thing of value" contained in Neb. Rev. Stat. § 28-109(22) (Reissue 1979) was applicable. In that subsection a thing of value is defined as "real property, tangible and intangible personal property, contract rights, choses in action, services, and any rights of use or enjoyment connected therewith." The trial court used this definition in its instructions and refused the defendant's requested instruction based on § 3-303.

The definition contained in § 28-109 was applicable here and the instruction given was correct. The defendant received "property, services, or present

value of any kind" when her account was given credit for the $600 draft. Between July 27, the date of deposit, and August 6, the date a debit memo was posted in the account, the balance contained the $600 credit. During this time checks amounting to $3,000 and drawn in favor of the credit union were charged to her account. Since the account was overdrawn as of August 2, three checks amounting to $2,250 were returned unpaid to the credit union on August 6 and credit memos posted to her account for these items.

The defendant also requested an instruction based on NJI 14.81 and a lesser-included offense instruction based on the theory she did not receive value for the $600 draft. The court gave NJI 14.81 verbatim as an instruction on credibility. There was no error in refusing the requested instruction.

So far as a lesser-included offense instruction is concerned, the rule is that such an instruction is not required unless the evidence produces a rational basis for an acquittal of the offense charged and a conviction of the lesser offense. The evidence in this case concerning the element of value was largely documentary and uncontradicted. Under these circumstances the lesser-included offense instruction was not required. In *State v. Vicars,* 207 Neb. 325, 334-35, 299 N.W.2d 421, 427 (1980), we said: "[W]here the prosecution has offered uncontroverted evidence on an element necessary for conviction of the greater crime, but not necessary for the lesser offense, the defendant must offer at least some evidence to dispute the issue if he wishes to have the benefit of a lesser-included offense instruction." See, also, *State v. Tamburano,* 201 Neb. 703, 271 N.W.2d 472 (1978).

The defendant's final assignment of error is that "[t]he court erred in admitting most of the documentary evidence." She argues that bank and credit union records, including deposit slips, statements of account, and checks and drafts deposited or

returned unpaid, were improperly admitted, either because they did not meet the requirements of the business records exception to the hearsay rule, or because such exception violates article I, § 11, of the Nebraska Constitution which provides: "In all criminal prosecutions the accused shall have the right . . . to meet the witnesses against him face to face . . . ."

The defendant states that her "primary concern . . . is the failure of the State to produce the potential witness who processed and altered the condition of the exhibits to include specific information . . . ." The testimony of each individual "teller or processor" is not required under Neb. Rev. Stat. § 27-803(5) (Reissue 1979). The requirements of § 27-803(5) were met through the "testimony of the custodian or other qualified witness" for each bank record introduced.

According to Wigmore, "It is generally agreed that the process of confrontation has two purposes, a main and essential one, and a secondary and dispensable one: (1) The main and essential purpose of confrontation is *to secure for the opponent the opportunity of cross-examination.*" (Emphasis in original.) 5 Wigmore on Evidence § 1395 at 150 (1974). Wigmore goes on to note that the common-law right of cross-examination "was *not a right devoid of exceptions.* The right to subject opposing testimony to cross-examination is the right to have the hearsay rule enforced; for the hearsay rule is the rule requiring cross-examination. . . . The [hearsay] rule had always involved the idea of exceptions, and the constitution-makers indorsed the general principle merely as such. They did not attempt to enumerate exceptions; they merely named and described the principle sufficiently to indicate what was intended . . . . The rule sanctioned by the Constitution is the hearsay rule as to cross-examination, with all the exceptions that may legitimately be

found, developed, or created therein." (Emphasis in original.) Wigmore, *supra,* § 1397 at 158.

The defendant's argument is just the opposite: that the framers of the Nebraska Constitution intended article I, § 11, to freeze use of the hearsay rule in criminal trials to the exceptions then generally recognized. The authorities do not support such an argument.

*Kay v. United States,* 255 F.2d 476, 480-81 (4th Cir. 1958), *cert. denied* 358 U.S. 825, 79 S. Ct. 42, 3 L. Ed. 2d 65, states: "[The confrontation clause] was intended to prevent the trial of criminal cases upon affidavits, not to serve as a rigid and inflexible barrier against the orderly development of reasonable and necessary exceptions to the hearsay rule.

"The power of the Congress and of a state legislature to provide for the admission of evidence is not subject to any such arbitrary limitation . . . . They may carve out a new exception to the hearsay rule, without violating constitutional rights, where there is reasonable necessity for it and where it is supported by an adequate basis for assurance that the evidence has those qualities of reliability and trustworthiness attributed to other evidence admissible under long-established exceptions to the hearsay rule."

Wigmore notes that the U. S. Supreme Court "has refused to equate the Sixth Amendment's confrontation clause and any particular version of the hearsay rule—ancient or modern. The net result is acknowledgement by the Court of the possibility of legitimate expansion and supplementation of the classically recognized exceptions, with however the corollary possibility of disapproval of the application in some circumstances of the recognized exceptions." § 1397 at 184. *Mancusi v. Stubbs,* 408 U.S. 204, 213, 92 S. Ct. 2308, 33 L. Ed. 2d 293 (1972), states: "[R]ecent decisions of this Court . . . have dealt at some length with the requirements of the Confrontation

Clause . . . . The focus of the Court's concern has been to insure that there 'are indicia of reliability which have been widely viewed as determinative of whether a statement may be placed before the jury though there is no confrontation of the declarant,' . . . and to 'afford the trier of fact a satisfactory basis for evaluating the truth of the prior statement . . . .' "

With regard to the business records exception to the hearsay rule, Wigmore notes that it stems from the old shopbook doctrine, of which he says: "[A] cardinal feature of the attitude of the courts, peculiar to the United States, was that the evidence was treated on the same grounds already set forth . . . as underlying the hearsay exceptions generally —the principles of necessity and of a circumstantial guarantee of trustworthiness. . . . The guarantee of trustworthiness was that which we now recognize in the regularity of the entries . . . ." Wigmore, *supra*, § 1518 at 429. Necessity for the business records exception, he continues, stems from "[t]he practical impossibility, on grounds of *mercantile inconvenience,* of producing all the clerks, salesmen, teamsters, or the like, who have contributed their knowledge on making up the items of voluminous accounts . . . ." (Emphasis in original.) Wigmore, *supra*, § 1521 at 442.

Compliance with the requirements of a particular exception to the hearsay rule does not necessarily mean that a defendant's confrontation right has not been violated. " '[C]ompliance with a state's hearsay rule does not *ipso facto* insure compliance with the constitutional mandate for confrontation in a criminal case.' " *State v. Olson,* 75 Wis. 2d 575, 585-86, 250 N.W.2d 12, 18 (1977). *Hagenkord v. State,* 100 Wis. 2d 452, 476, 302 N.W.2d 421, 434 (1981), notes: "Each confrontation claim must stand on its own facts . . . ." Also, n. 3 at 475, 302 N.W.2d at 433, states: "The fundamental question remains the

same: Does the hearsay have sufficient indicia of trustworthiness and reliability that it will 'advance a practical concern for the accuracy of the truth-determining process.' '' *State v. Olson, supra* at 588, 250 N.W.2d at 19, adds: "Determining whether the right to confront and to cross-examine must give way in any particular instance 'calls into question the ultimate '' 'integrity of the fact-finding process' '' and requires that the competing interest be closely examined.' '' Finally, *Hagenkord, supra* at 477, 302 N.W.2d at 434, notes that "[b]asically, however, the important inquiry is the reliability of the evidence and the likelihood that cross-examination could impeach its credibility or authenticity."

As to the presence of "sufficient indicia of trustworthiness and reliability," *United States v. Colyer,* 571 F.2d 941, 947 (5th Cir. 1978), *cert. denied* 439 U.S. 933, 99 S. Ct. 325, 58 L. Ed. 2d 328, notes: "Th[e] cases indicate that the trial court has great discretion in determining whether the document is trustworthy. We find no abuse of discretion where the witness testified that these [bank credit card] records were made and kept in the regular course of business and it was the regular course of business to make such records, that he was the custodian of the records, and the witness was knowledgeable as to how they arrived at his bank and how they were handled once they were received at the bank. Nothing more is required." Similarly, in *Hanley v. United States,* 416 F.2d 1160, 1167 (5th Cir. 1969), *cert. denied* 397 U.S. 910, 90 S. Ct. 908, 25 L. Ed. 2d 91 (1970), bank collection slips were found to be sufficiently trustworthy "because of their being created in the ordinary course of business affairs, as routine recurring entries to identify routine transactions. Mrs. Martin, the bank Vice President in charge of collections, testified that she routinely over a course of ten years filled out similar slips for Hanley and for other customers of the bank . . . ."

In the present case, knowledgeable witnesses from each applicable financial institution testified as to the routine creation of the documents which were admitted under § 27-803(5), that they were created in the regular course of business, that it was the regular course of the institution's business to create such documents, or the notations upon them, and that the documents or notations thereon were generated under the witnesses' supervision.

The record here does not show that the production of the cash teller or clerk who "altered or processed" each documentary exhibit would have increased the trustworthiness of the evidence here. The trial court did not abuse its discretion in finding the challenged documents sufficiently trustworthy and reliable to protect the defendant's right to confrontation, and it was not error to admit the documentary evidence of which defendant complains.

The judgment of the District Court is affirmed.

AFFIRMED.