762 N.W.2d 58 (2009)
277 Neb. 327
STATE of Nebraska, appellee,
v.
Anthony BABBITT, appellant.
No. S-08-498.
Supreme Court of Nebraska.
March 6, 2009.
*60 John S. Berry, of Berry Law Firm, Lincoln, for appellant.
Jon Bruning, Attorney General, and Kimberly A. Klein, Lincoln, for appellee.
WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.
After a bench trial, the district court convicted Anthony Babbitt of two counts of criminal impersonation for violating Neb. Rev.Stat. § 28-608 (Reissue 2008). The court sentenced him to 3 years' probation for each count, with the sentences to run concurrently. We affirm.
This case arose when Internet Networks Computer Staffing Incorporated (INCS), and its sole officer, Anthony Babbitt, obtained default judgments against parties who were not indebted to INCS. In December 2005 and January 2006, INCS obtained judgments against six individual defendants in Lancaster County Small Claims Court. INCS claimed that the defendants failed to pay for computer services provided by INCS. The defendants did not appear in court, and the court awarded INCS default judgments.
After INCS obtained the judgments in Lancaster County, the Douglas County sheriff's office began investigating Babbitt for judgments INCS had obtained in Douglas County Small Claims Court. Based upon evidence gathered from a search executed on Babbitt's residence, the Lincoln Police Department alerted the Lancaster County Small Claims Court that INCS' default judgments may have been fraudulently obtained. Specifically, the evidence presented to the court showed that none of the defendants whom INCS had brought claims against had used INCS' services and so did not owe INCS any money as INCS alleged. The court set aside the judgments in May 2006.
The State later charged Babbitt with six counts of criminal impersonation under § 28-608. At trial, the evidence uncovered a novel scheme where Babbitt, acting for INCS, had filed the above-mentioned claims in Lancaster County Small Claims Court. Babbitt, in filing the claims, used the names, partial Social Security numbers, and dates of birth for individuals living outside the state. Despite their out-of-state residences, he obtained judgments by using the addresses of individuals living in Lincoln who had names similar to those of the out-of-state victims. None of the individualsthose nonresidents whose names and personal information were used or those living in Lincoln whose addresses were usedhad ever done business with INCS or Babbitt. Because the State convicted Babbitt of only two counts of criminal impersonation, we will discuss only the evidence regarding those two convictions.
*61 Using information from the Internet, INCS filed a claim in Lancaster County Small Claims Court in October 2005 listing a "Robert D. Gentry" as the defendant. Although the signature on the claim is illegible, next to the signature appears the title "President INCS, Inc." The claim gave a partial Social Security number, a date of birth, and a Lincoln address for the defendant. When Robert Gentry failed to make an appearance in court, INCS obtained a default judgment for $2,098.06. The clerk then sent a default judgment notice to Robert Gentry at the Lincoln address listed on the claim form. It was returned as undeliverable and unable to forward.
At trial, the State called two witnesses regarding the information given to the court by INCS: John Gentry, who lives at the Lincoln address, and Robert Gentry, whose name, partial Social Security number, and date of birth matched those listed on the claim. John Gentry testified that he lived at the Lincoln address since August 1992 and that no one by the name "Robert Gentry" lives at that address. He also testified that neither the partial Social Security number nor the date of birth shown on the claim was his and that he had never purchased computer services from INCS or Babbitt.
Robert Gentry, the alleged victim of the scam, lives in Mesa, Arizona, and before the trial had never been in Nebraska. He identified his name, his partial Social Security number, and his date of birth as the same as those shown on the claim. He also testified that he had never done business with INCS or Babbitt and had never given anyone permission to use his name, Social Security number, or date of birth on any document.
In November 2005, INCS filed a second claim in Lancaster County Small Claims Court listing a "Joanne Bonascorso" as the defendant. Like the Gentry claim, the signature on this claim is also illegible, but next to the signature shows the title, "President INCS, Inc." The claim provided a partial Social Security number, date of birth, and Lincoln address for the defendant. INCS obtained a judgment for $1,495.
At trial, Linda Bonascorso testified that she lived at the Lincoln address for the previous 9 years. She could not identify the name "Joanne Bonascorso," the partial Social Security number, or the date of birth listed on the claim. Joanne Bonascorso, of Las Banos, California, also testified. Although she had never been to Nebraska before the trial, the name, partial Social Security number, and date of birth listed on the claim matched her own. She too, had never heard of INCS or Babbitt.
Based upon this testimony and evidence seized from Babbitt's residence, the court convicted Babbitt of two counts of criminal impersonation. The court sentenced him to 3 years' probation on each count.
Babbitt assigns as error that the State failed to adduce sufficient evidence to support his convictions and that the trial court erred in denying his motion for a new trial.
[1] In reviewing a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: We do not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. We will affirm a conviction absent prejudicial error, if the evidence admitted at trial, viewed and construed most favorably to the State, is sufficient to *62 support the conviction.[1]
[2] We first address Babbitt's argument that the evidence is insufficient to prove that he obtained the fraudulent judgments for INCS. Babbitt argues that someone else could have obtained the judgments for INCS.
[3,4] In finding a defendant guilty beyond a reasonable doubt, a fact finder may rely upon circumstantial evidence and the inferences that may be drawn therefrom.[2] And remember, circumstantial evidence is not inherently less probative than direct evidence.[3]
The individual's signature who filed the claims in small claims court for INCS is illegible but the title following the signature clearly reads, "President INCS, Inc." Evidence seized from Babbitt's home during the execution of a search warrant shows that Babbitt was the only officer of INCS. The record shows no one other than Babbitt was involved in the corporation. Furthermore, a lieutenant of the Douglas County sheriff's office identified Babbitt as appearing in Douglas County Small Claims Court for INCS when Babbitt represented he was the president of INCS. But most damaging is what could be described as Babbitt's "How to Scam Kit" seized by the sheriff's department. It included notes and reminders that Babbitt had written to himself on how to scam people and how to create a "crazy" paper trail that would be difficult to follow.
Viewing this evidence in a light most favorable to the State, we determine the State adduced sufficient evidences that Babbitt was the individual who obtained the judgments for INCS.
Babbitt's remaining arguments are related to his interpretation of § 28-608(1)(d). The State convicted Babbitt of two counts of criminal impersonation in violation of § 28-608, which provides:
(1) A person commits the crime of criminal impersonation if he or she:
. . . .
(d) Without the authorization or permission of another and with the intent to deceive or harm another:
(i) Obtains or records personal identification documents or personal identifying information; and
(ii) Accesses or attempts to access the financial resources of another through the use of a personal identification document or personal identifying information for the purpose of obtaining credit, money, goods, services, or any other thing of value.
Babbitt contends that although he may be guilty of some offense, his conduct does not violate § 28-608(1)(d), and that thus, the evidence is insufficient to support his convictions. Babbitt argues (1) that obtaining a fraudulent judgment in small claims court does not constitute an attempt to access the financial resources of his victims and (2) that a judgment is not a "thing of value."
[5] Under § 28-608(1)(d), a defendant must have accessed, or attempted to access, the financial resources of his or her victim. Babbitt asserts that he did not take steps to enforce the judgments or to sell them. Thus, he argues he did not attempt to access the financial resources of any of his victims. Moreover, he argues that even if he had sold the judgments, it *63 would have been the innocent purchaser of the judgments and not Babbitt who would have accessed or attempted to access the victims' financial resources. Babbitt presents a novel argument, but after examining § 28-608(1)(d), it loses its luster.
[6] A defendant's conduct rises to criminal attempt if he or she "[i]ntentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime."[4] Conduct "shall not be considered a substantial step . . . unless it is strongly corroborative of the defendant's criminal intent."[5] Whether a defendant's conduct constitutes a substantial step toward the commission of a particular crime and is an attempt is generally a question of fact.[6]
We conclude that in obtaining the judgments, Babbitt took a first and substantial step toward accessing the financial resources of his victims. After receiving the judgments, Babbitt could have attempted to execute on the judgments. Although Babbitt did not take any of these steps, the options were available to him once he received the judgments, and his obtaining the fraudulent judgments was a necessary first step in his scheme to obtain his victims' money. Thus, the State adduced sufficient evidence that Babbitt attempted to access the financial resources of his victims.
In addition, § 28-608(1)(d) requires the State to prove beyond a reasonable doubt that Babbitt used his victims' personal identifying information to attempt to access their financial resources for obtaining "credit, money, goods, services, or any other thing of value." Babbitt argues that the default judgments he obtained in small claims court are not "thing[s] of value," and, thus, he did not violate the statute. The State argues that judgments are personal property and therefore "thing[s] of value" under the statute.[7]
We conclude that whether a judgment in this case is a "thing of value" is irrelevant. Here, Babbitt's ultimate goal in obtaining the judgments was to obtain money from his victims. As discussed, his obtaining a default judgment constituted an "attempt" to access his victims' financial resources to obtain money.
[7] We have already concluded that Babbitt attempted to access his victims' financial resources and did so to obtain money. We now focus on whether Babbitt (1) obtained personal identifying information of his victims, (2) did so without their permission, (3) did so with the intent to deceive or harm them, and (4) used that information in his attempt to access their financial resources. The district court concluded he did, and we do also.
The criminal impersonation statute defines personal identifying information as meaning "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person including a person's: (i) [n]ame; (ii) date of birth; (iii) address; [and] (v) [S]ocial [S]ecurity number . . . ."[8] The evidence shows that Babbitt obtained his victim's names, partial Social Security numbers, *64 and dates of birth and that he used those numbers without their consent. Babbitt's obtaining civil judgments for services that he had not provided showed an intent to deceive or harm his victims.
Moreover, to file the claims in small claims court, Babbitt had to provide the victims' names, partial Social Security numbers, dates of birth, and addresses. Without that information, he could not file the original claims. Because the personal identifying information leads directly to his obtaining the judgments, we conclude that Babbitt did use the personal identifying information in his attempt to access the financial resources of his victims.
Viewed in a light most favorable to the State, we determine the evidence is sufficient to prove Babbitt's convictions beyond a reasonable doubt.
AFFIRMED.
HEAVICAN, C.J., participating on briefs.
NOTES
[1] See State v. Segura, 265 Neb. 903, 660 N.W.2d 512 (2003).
[2] State v. Miner, 265 Neb. 778, 659 N.W.2d 331 (2003).
[3] Id.
[4] Neb.Rev.Stat. § 28-201(1)(b) (Reissue 2008).
[5] § 28-201(3).
[6] See State v. Green, 238 Neb. 475, 471 N.W.2d 402 (1991).
[7] See Neb.Rev.Stat. § 28-109(22) (Reissue 2008) (defining "thing of value" for prosecutions under chapter 28, article 6). See, also, State v. Spaulding, 211 Neb. 575, 319 N.W.2d 449 (1982).
[8] § 28-608(4)(b).