Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/07/2016 12:09 PM CDT

State of Nebraska, appellee, v.
Israhel Cruz, appellant.
___ N.W.2d ___

Filed March 22, 2016.    No. A-15-097.

1. **Evidence: Appeal and Error.** In reviewing a sufficiency of the evidence claim, regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact.

2. **Criminal Law: Evidence: Appeal and Error.** The relevant question for an appellate court reviewing the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

3. **Criminal Attempt: Intent.** A defendant's conduct rises to criminal attempt if he or she intentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime.

4. ____: ____. Conduct shall not be considered a substantial step unless it is strongly corroborative of the defendant's criminal intent.

5. **Criminal Attempt: Intent: Sexual Assault.** To support a conviction of either attempted first degree sexual assault of a child or attempted incest, the actor's conduct must be strongly corroborative of an intent to penetrate the victim.

6. **Double Jeopardy: Evidence: Appeal and Error.** The Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient.

7. **Trial: Rules of Evidence: Appeal and Error.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked.

8. **Trial: Evidence: Witnesses.** An offer of proof must demonstrate to the court that questions put to a witness call for competent evidence.

9. **Sexual Assault: Evidence: Proof.** Evidence of a victim's allegedly false prior claims of sexual assault is properly excluded where the defendant made no showing that the prior claims were, in fact, false.

10. **Effectiveness of Counsel: Proof.** In order to prevail on a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that he or she was prejudiced by such deficiency.

11. ____: ____. The two prongs of the ineffective assistance test, deficient performance and prejudice, may be addressed in either order.

12. **Effectiveness of Counsel: Records: Appeal and Error.** A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. Rather, the determining factor is whether the record is sufficient to adequately review the question.

13. **Trial: Joinder.** The standard for joinder of offenses is set forth in Neb. Rev. Stat. § 29-2002 (Reissue 2008).

14. ____: ____. Offenses are properly joinable under Neb. Rev. Stat. § 29-2002(1) (Reissue 2008) if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

15. ____: ____. Whether offenses are properly joined involves a two-stage analysis in which it is determined first whether the offenses are related and properly joinable and second whether an otherwise proper joinder was prejudicial to the defendant.

16. **Trial: Joinder: Proof.** A defendant opposing joinder has the burden of proving prejudice.

17. **Trial: Joinder: Evidence: Juries.** Prejudice usually does not occur from joined charges if the evidence is sufficiently simple and distinct for the jury to easily separate evidence of the charges during deliberations.

18. **Sentences: Evidence.** A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed.

19. **Sentences: Probation and Parole.** When attempting to determine at sentencing whether the defendant is a proper candidate for probation and rehabilitation, the court, of necessity, must consider whether the defendant acknowledges his or her guilt.

20. **Sentences.** A defendant's lack of remorse is a proper factor for the court to consider at sentencing.

21. ____. A defendant's failure to take responsibility for his or her actions is a proper factor for the court to consider at sentencing.

22. ____. When imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education and experience, social and cultural background, past criminal record, and motivation for the offense, as well as the nature of the offense and the violence involved in the commission of the crime.

23. **Sentences: Appeal and Error.** Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed.

Appeal from the District Court for Dakota County: PAUL J. VAUGHAN, Judge. Affirmed in part, and in part reversed and vacated.

Zachary S. Hindman, of Bikakis, Mayne, Arneson, Hindman & Hisey, for appellant.

Douglas J. Peterson, Attorney General, and Stacy M. Foust for appellee.

IRWIN, PIRTLE, and RIEDMANN, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Israhel Cruz appeals his convictions and sentences for attempted first degree sexual assault of a child and attempted incest as to his daughter, G.C., as well as his sentence for child abuse of G.C. Cruz also appeals his convictions and sentences for seven charges relating to his other daughter, V.C.: first degree sexual assault of a child, incest, two counts of manufacturing a visual depiction of sexually explicit conduct with a child as a participant, two counts of possessing a visual depiction of sexually explicit conduct with a child as a participant, and child abuse. On appeal, Cruz argues that there was insufficient evidence to support his convictions for attempted first degree sexual assault and attempted incest as to G.C., that the district court erred in not permitting evidence of V.C.'s allegation of a prior sexual assault, that Cruz'

trial counsel was ineffective, and that Cruz received excessive sentences.

Upon our review, we find that there was insufficient evidence to support Cruz' convictions for attempted first degree sexual assault of G.C. and attempted incest with G.C. We reverse Cruz' convictions for attempted first degree sexual assault of a child and attempted incest and vacate his sentences for those charges. We find no merit to Cruz' other assertions on appeal. Accordingly, we affirm Cruz' convictions and sentences for child abuse as to G.C. and for all of the charges relating to V.C.

## II. BACKGROUND

The events giving rise to this action involve G.C. and V.C., the biological daughters of Cruz. V.C. was born in May 2001 and G.C. was born in May 2003. Cruz was born in July 1984.

On February 27, 2014, G.C. told a friend that her father, Cruz, had been sexually abusing her. The friend informed her mother, who reported the abuse to the Department of Health and Human Services. As a result of the report to the department, a child and family services specialist went to the Cruz home on the evening of February 27. The specialist interviewed G.C. and V.C. separately. After interviewing the girls, the child and family services specialist determined G.C. and V.C. should be removed from the home for their safety.

The day after G.C. and V.C. were removed from their home, both girls met with a sexual assault nurse examiner and a forensic interviewer. An examination revealed that V.C. had missing hymenal tissue consistent with repeated penetration. V.C. also tested positive for chlamydia, a sexually transmitted infection frequently spread through penetration. G.C. was too upset to submit to a physical examination that day, but a later examination revealed no abnormalities. Cruz later tested positive for chlamydia.

Cruz was arrested and eventually charged with three counts relating to G.C.: first degree sexual assault of a child, incest,

and child abuse. Cruz was also charged with seven counts relating to V.C.: first degree sexual assault of a child, incest, two counts of manufacturing a visual depiction of sexually explicit conduct with a child as a participant, two counts of possessing a visual depiction of sexually explicit conduct with a child as a participant, and child abuse.

At the trial, both girls testified. According to V.C., Cruz would come into her room at night and have sex with her. When asked what she meant by "sex," V.C. said, "Like a mom and dad will create a baby." With respect to the specific body parts involved, V.C. identified Cruz' "bottom" as an area encompassing his penis on a diagram. V.C. identified her "bottom" as an area encompassing her lower abdomen, thighs, and vagina. V.C. testified that her father, Cruz, would put his bottom in her mouth. V.C. also testified that he would touch her bottom with his bottom, move up and down, and then her bottom would hurt afterward. The State asked V.C. if what "you were describing earlier when your dad would come into your room" had happened more than once. V.C. testified that it had happened more than once and that it had started when she was 9 or 10 years old. V.C. testified that the last time it happened was the Saturday before she was interviewed.

V.C. also testified that Cruz had taken inappropriate pictures of her. V.C. testified that Cruz had used his cell phone to take two pictures that depicted V.C. in her bra and Cruz in his boxers. According to V.C., Cruz also had naked pictures of V.C. on his cell phone that V.C. had taken herself.

G.C. testified that Cruz would come into her room while she was sleeping. According to G.C., Cruz would remove G.C.'s clothes, remove his own clothes, and touch G.C. with what she called Cruz' "bottom parts." On a diagram depicting a naked man, G.C. circled an area that included the penis as being the man's "bottom parts." G.C. testified that Cruz would touch his "bottom parts" to her "bottom parts," which she identified on a diagram as being the area below her navel and encompassing her right hip, crotch, and thighs. The State asked G.C.

whether "[w]hat you just described with his bottom part touching your bottom part" had happened more than one time. G.C. testified that it had happened more than once and that "the last time" was 1 or 2 weeks before her interview.

At the close of the State's case, Cruz moved to dismiss all 10 counts. The court denied the motion as to eight of the counts, but reserved ruling on the counts of first degree sexual assault of G.C. and incest with G.C. The court stated it was not satisfied that the State had presented evidence of a required element of both first degree sexual assault of a child and incest, namely penetration.

Cruz then proceeded to put on his case in chief, including calling G.C. to the stand. Cruz' attorney asked G.C., "[When was] the last time . . . anything happened between you and your father . . . ?" G.C. testified that "the last time my dad did it" was 2 to 3 weeks before she was removed from the home. G.C. testified that during the last incident, Cruz had removed G.C.'s pants. Cruz' attorney asked G.C., "[D]id he then touch you on any part — any part of your body?" to which G.C. replied, "Yes."

On the final day of trial, the court ruled on Cruz' motion to dismiss the counts of first degree sexual assault of a child and incest pertaining to G.C. The court overruled the motion to dismiss the counts outright, but decided to instruct the jury as to the lesser-included offenses of attempted first degree sexual assault of a child and attempted incest.

The jury found Cruz guilty of all 10 counts.

For the charges involving G.C., the trial court imposed the following sentences: (1) 15 to 20 years' imprisonment for attempted sexual assault of a child in the first degree, (2) 1 to 3 years' imprisonment for attempted incest, and (3) 2 to 5 years' imprisonment for child abuse. For the charges involving V.C., the court imposed the following sentences: (1) 30 to 40 years' imprisonment for first degree sexual assault of a child, (2) 3 to 5 years' imprisonment for incest, (3) 3 to 5 years' imprisonment for the first count of manufacturing a visual

depiction of sexually explicit conduct with a child as a partici-
pant, (4) 3 to 5 years' imprisonment for the second count of
manufacturing a visual depiction of sexually explicit conduct
with a child as a participant, (5) 1 to 3 years' imprisonment for
the first count of possession of a visual depiction of sexually
explicit conduct with a child as a participant, (6) 1 to 3 years'
imprisonment for the second count of possession of a visual
depiction of sexually explicit conduct with a child as a partici-
pant, and (7) 2 to 5 years' imprisonment for child abuse. The
court ordered that the sentences be served consecutively and
gave Cruz credit for 314 days previously served.

Cruz appeals from his convictions on all the counts except
child abuse as to G.C. and from his sentences on all 10 convic-
tions. Additional facts will be discussed, as necessary, in the
analysis section of this opinion.

### III. ASSIGNMENTS OF ERROR

On appeal, Cruz assigns numerous errors. Those assigned
errors, restated and renumbered, are that (1) there was insuf-
ficient evidence to support Cruz' convictions for attempted first
degree sexual assault of G.C. and attempted incest with G.C.;
(2) the trial court erred in excluding evidence of V.C.'s lack of
credibility with respect to a prior allegation of sexual abuse;
(3) Cruz' trial counsel was ineffective in several ways, includ-
ing failing to request a limiting instruction, failing to move to
sever the charges, failing to investigate V.C.'s sexual history,
and failing to object to a violation of Cruz' Fifth Amendment
rights at sentencing; and (4) the sentences imposed upon Cruz
were excessive.

### IV. ANALYSIS

#### 1. Sufficiency of Evidence for Attempted
#### First Degree Sexual Assault of G.C.
#### and Attempted Incest With G.C.

Cruz argues that there was insufficient evidence to sup-
port his convictions for attempted first degree sexual assault

of G.C. and attempted incest with G.C. We note that Cruz does not argue the sufficiency of the evidence for child abuse of G.C. With respect to attempted first degree sexual assault and attempted incest of G.C., Cruz argues that there was inadequate evidence to prove an essential element of both crimes—attempted penetration. Cruz also asserts that there was insufficient evidence that the attempted sexual assault and attempted incest occurred within the timeframe set forth in the jury instructions. The evidence presented does not strongly corroborate Cruz' intent to penetrate G.C. as required by law. We therefore agree that there was insufficient evidence to support Cruz' convictions for attempted first degree sexual assault of a child and attempted incest.

[1,2] In reviewing a sufficiency of the evidence claim, regardless of whether the evidence is direct, circumstantial, or a combination thereof, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. See *State v. Wells*, 290 Neb. 186, 859 N.W.2d 316 (2015). The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Dominguez*, 290 Neb. 477, 860 N.W.2d 732 (2015).

[3] A defendant's conduct rises to criminal attempt if he or she intentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime. *State v. Babbitt*, 277 Neb. 327, 762 N.W.2d 58 (2009); Neb. Rev. Stat. § 28-201 (Cum. Supp. 2014).

[4] Conduct shall not be considered a substantial step unless it is strongly corroborative of the defendant's criminal intent. *Babbitt, supra*.

In the case at hand, both first degree sexual assault of a child and incest require penetration. The incest statute provides:

"Any person who shall knowingly . . . engage in sexual penetration with any person who falls within the [applicable] degree[] of consanguinity . . . commits incest." Neb. Rev. Stat. § 28-703(1) (Reissue 2008). The relationship between parents and children is a prohibited degree of consanguinity for incest. Neb. Rev. Stat. § 28-702 (Reissue 2008).

The statute prohibiting first degree sexual assault of a child provides as follows: "A person commits sexual assault of a child in the first degree . . . [w]hen he . . . subjects another person under twelve years of age to sexual penetration and the actor is at least nineteen years of age or older." Neb. Rev. Stat. § 28-319.01(1)(a) (Cum. Supp. 2014). In contrast to first degree sexual assault of a child, second and third degree sexual assault of a child require only that the actor subject the child to "sexual contact," not penetration. See Neb. Rev. Stat. § 28-320 (Reissue 2008).

[5] Because both first degree sexual assault of a child and incest require penetration, attempted first degree sexual assault of a child and attempted incest require proof of attempted penetration. That is, in order to support Cruz' convictions for attempted first degree sexual assault of a child and attempted incest, Cruz' conduct must be strongly corroborative of his intent to penetrate G.C. See *Babbitt, supra*. See, also, § 28-201.

G.C. testified that Cruz touched his "bottom parts" to her "bottom parts." G.C. identified Cruz' bottom parts as an area including his penis and her bottom parts as an area encompassing her hip, thighs, and vagina. When called as a witness for the State, G.C. testified that "the last time" had been 1 to 2 weeks before her interview. When called as a witness for Cruz, G.C. testified that the most recent incident had occurred 2 to 3 weeks before she was removed from the home when Cruz had removed G.C.'s pants and touched her on some part of her body. Viewed in the light most favorable to the State, G.C.'s statements could be interpreted as meaning that during the most recent incident, Cruz touched his penis to her vagina.

In other cases of attempted first degree sexual assault, the defendant's intention to penetrate the victim can be inferred from the circumstances which prevented the defendant from completing the crime. For example, in *State v. Swoopes*, 223 Neb. 914, 395 N.W.2d 500 (1986), *overruled on other grounds, State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987), the defendant entered the victim's house, put a knife to her throat, and attempted to drag her upstairs. The victim struggled while the defendant reached down the victim's shirt and fondled her breast. *Id.* The victim eventually succeeded in pulling loose from the defendant and ran away, at which point the defendant fled. *Id.* In *Swoopes*, the fact finder could infer that the defendant had the intent to subject the victim to sexual penetration but had been unable to do so because the victim interrupted the sexual assault by struggling and fleeing. The fact that the victim's struggle—not the defendant's voluntary choice—ended the encounter supports an inference that the defendant intended his actions to culminate in a different act: penetration. See *id.* See, also, *State v. Jameson*, 239 Neb. 109, 474 N.W.2d 475 (1991) (finding sufficient evidence to support defendant's conviction of attempted first degree sexual assault where defendant entered victim's house, crawled into victim's bed, and placed his hand and penis in her vaginal area before victim freed herself and called police); *State v. Luff*, 18 Neb. App. 422, 783 N.W.2d 625 (2010) (upholding defendant's conviction for attempted first degree sexual assault of child where defendant touched victim's vagina with his finger and penis before victim got off bed where assault was occurring); *State v. Schmidt*, 5 Neb. App. 653, 562 N.W.2d 859 (1997) (finding sufficient evidence to support defendant's attempted first degree sexual assault conviction where defendant had transported victim to isolated spot, hit her on head, and removed her shirt and bra before victim halted assault by struggling, running, and screaming).

These cases are in contrast to the facts of the case at hand. Construing the evidence in the light most favorable to the State as we are required to do, the evidence shows that Cruz touched G.C.'s vagina with his penis, but it does not demonstrate that Cruz did so with the intent that his actions culminate in a different act, such as penetration. After eliciting G.C.'s testimony that her father had touched his "bottom parts" to her "bottom parts," the State did not ask G.C. any additional questions, such as why Cruz stopped touching her, or any other questions that would allow us to draw the inference that he intended to penetrate her at that time. Unlike in the cases discussed above, the State adduced no evidence that Cruz was interrupted or otherwise prevented from penetrating G.C. Because of this deficiency in evidence, we must therefore conclude that Cruz' actions are not strongly corroborative of his intention to penetrate G.C. Cf. *State v. Babbitt*, 277 Neb. 327, 762 N.W.2d 58 (2009). While the evidence may have supported a finding that Cruz subjected G.C. to sexual contact as required for second or third degree sexual assault, the State failed to adduce evidence of Cruz' intent to penetrate G.C. as required to convict him of attempted first degree sexual assault.

We conclude that there was insufficient evidence to support Cruz' convictions for attempted first degree sexual assault of a child and attempted incest. Because we conclude the evidence was insufficient to support Cruz' convictions, we need not address his alternative argument regarding the timing of the offenses.

[6] The Double Jeopardy Clause precludes a second trial once the reviewing court has found the evidence legally insufficient. *State v. Welch*, 275 Neb. 517, 747 N.W.2d 613 (2008). Because we find the evidence legally insufficient, Cruz cannot be retried on the charges of attempted sexual assault of a child in the first degree and attempted incest. We reverse Cruz' convictions for attempted first degree sexual assault

of a child and attempted incest and vacate his sentences for those charges.

## 2. Exclusion of Evidence of V.C.'s Prior Claim of Sexual Abuse

Cruz alleges that the district court erred by excluding evidence at trial that V.C. had "previously made false accusations relating to a purported sexual assault against V.C. by another individual." Brief for appellant at 26. Cruz argues that the evidence should have been admitted because it was relevant to V.C.'s credibility. Cruz also asserts that the trial court improperly analyzed the evidence's admissibility under Neb. Rev. Stat. § 27-412 (Cum. Supp. 2014). As we understand Cruz' argument, he asks us to reverse his convictions for all the charges involving V.C. because the court erroneously excluded evidence of her credibility, but he does not argue that there was insufficient evidence to support his convictions for the charges involving V.C. We note that Cruz did not make an offer of proof relating to V.C.'s prior claim of sexual abuse. Without an offer of proof, we do not know the substance of the evidence, who the witness would be to provide the evidence, or what is the falsehood. Because the alleged error was not properly preserved for appellate review, we cannot determine the merits of Cruz' second assignment of error.

[7,8] Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected and the substance of the evidence was made known to the judge by offer or was apparent from the context within which questions were asked. *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004). An offer of proof must demonstrate to the court that questions put to a witness call for competent evidence. *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997).

At various hearings before and during the trial, the State and Cruz' attorney discussed an incident from 2010 in which V.C. reported that she had been sexually abused by a person other

than Cruz. The first discussion of the prior incident occurred at a hearing on Cruz' motion in limine to exclude evidence that Cruz and V.C. had both tested positive for chlamydia. The court inquired whether Cruz was the only person V.C. was alleged to have had sexual contact with. The State reported that V.C. had not had sexual intercourse with anyone other than Cruz. Cruz' attorney disagreed, stating that "there was another report that was taken [and t]hey alleged a sexual assault on her." The attorneys and the trial court judge then had the following dialog regarding the details of the prior incident:

[Court]: And the child said she had sexual intercourse?

[Cruz' counsel]: No, Your Honor. I don't believe she — She made some statements that — that something happened. There was some statements that didn't seem to be possibly true, so not exactly certain what happened, Your Honor, fully.

[Court]: Well, but what did she say happened?

[Cruz' counsel]: She said that she was tied up and that a — a person had touched her . . . . If I could have a moment, maybe I can find the report and I can just — or if [the prosecutor] has it handy, I can —

. . . .

[The State]: The child states that the — Let's see. Put me on the bed, tied some strings around her legs, said don't go away. She states that strings were tied to the bed and she couldn't move.

She says that this person tried to kiss her, but she kept going like this, and demonstrated moving her hands back and forth. She said she was going to call her sister and she woke up. . . .

[The State]: The incident narrative that was given to us, Your Honor, states that during the interview [V.C.] stated that [the man] attempts to kiss her but was unsuccessful in doing so, denied that [the man] touched her in any place that made her feel uncomfortable.

[Court]: Okay.

[The State]: And then said placed her in a bed and tied her — tied string around her ankles and wrists and secured her to the bed. And then when asked how she got away, she stated the police came into the locked room and cut the strings off of her.

. . . .

[Cruz' counsel]: Your Honor, and what we know from this report is that part of that couldn't possibly have been true, that no officer did come and cut her free. And so if — if she may have been mistaken or — Well, not may have, that she was just wrong in some of what she was saying, I think there could be [a] possibility that maybe more things happened, maybe there was some other contact. . . .

. . . .

. . . [I]f there are other ways or possibilities that — that [V.C.] could have caught these diseases, then I think that has to be explored . . . .

The court eventually denied Cruz' motion to exclude evidence that V.C. and Cruz had both tested positive for chlamydia.

The second discussion regarding V.C.'s prior allegation of sexual abuse occurred at a hearing on the State's motion in limine asking the court to exclude all evidence of V.C.'s prior sexual behavior pursuant to § 27-412. Section 27-412 provides that evidence of a victim's other sexual behavior or sexual predisposition is not admissible in cases involving sexual misconduct. The statute goes on to provide exceptions to the prohibition against using a victim's sexual behavior, including when the evidence is used to prove that a person other than the accused was the source of semen, injury, or other physical evidence. See § 27-412(2)(a)(i).

Cruz opposed the State's motion in limine to exclude evidence of V.C.'s prior sexual behavior pursuant to § 27-412. Cruz' attorney argued that he should be permitted to ask V.C. to elaborate about her prior claim of sexual abuse. In

addition to wanting to ask V.C. for more details about the alleged sexual abuse, Cruz' attorney stated he also wanted to ask her questions about the incident because it was relevant to her credibility:

> Now, there may be other questions related to her contact with this individual, but those would be toward her veracity involving statements that — that might or might not have been true. And so I may want to ask questions of her about that incident.

> And not necessarily involving any sexual aspect to it, but just as to the facts and circumstances surrounding the incident and — what she may have told people versus what other people were able to observe.

> And so it would be more toward her credibility, Your Honor, and not necessarily as to any sexual behavior beyond what I've just spoke to the Court about.

The court then asked Cruz' attorney to clarify which subsection of § 27-412 permitted it to admit the evidence in question. Cruz' attorney responded that the evidence would be offered to prove that a person other than the defendant was the source of semen, injury, or other physical evidence. The State argued that the man from the prior incident could not be the source of semen, injury, or physical evidence because there was no evidence that the prior incident had involved penetration:

> What we have, Your Honor, is [V.C.] going to a CAC[ (Child Advocacy Center)]. When she's interviewed at the CAC she talks about, well, he was trying to kiss me.

> Even at the CAC interview initially there was no indication of any type of vaginal penetration, vaginal whatever. Nothing was dealing with the vaginal area, which he's trying to say this is relevant to show injuries contained within the vaginal vault.

> Later on, I believe, at the CAC interview that occurred [in this case] in February of 2014, just as an aside, toward

the end of the interview [V.C.] indicated that there was some touching and licking down there. And that was the extent of it.

It wasn't explored as to what kind of touching, if it was penetration, if it was anything else. It [was] just that there was touching and there was licking.

. . . .

And then we have a situation where last week she's talking to the officer, she says she remembers telling something about some sexual conduct — or contact with this man.

. . . [S]exual contact certainly is — you know, what is that? That could be touching, that could be licking. For a child of that age it could be — You just don't know what it is.

In response to the parties' arguments on the motion in limine, the court noted that § 27-412 requires the accused to provide 15 days' notice that he or she intends to present evidence of a victim's sexual history and that Cruz had not provided such notice. The court further stated that because Cruz had not provided the required notice, the court had been unable to hold a hearing to evaluate the evidence. The court granted the State's motion to exclude evidence of V.C.'s sexual history.

The third discussion of V.C.'s allegation of prior sexual abuse occurred at a hearing on Cruz' motion to admit evidence under § 27-412. On the second day of trial, Cruz filed a motion requesting that the court allow him to admit evidence of V.C.'s prior claim of sexual assault. Cruz' motion stated in part, "Th[e] evidence will show that the alleged victim, V.C., has made false and/or misleading statements [to] officials regarding her sexual behavior." At the hearing, the trial court asked Cruz whether showing a victim made false or misleading statements was a basis for admissibility under § 27-412. Cruz' attorney stated, "[I]t kind of goes to the — to the whole package of her interaction with the officers." When the court

inquired what Cruz would ask V.C. about the prior incident, Cruz' attorney stated, "I want to ask her what happened." The trial court overruled Cruz' motion, stating that Cruz had not provided timely notice pursuant to § 27-412 and that the evidence did not fall under any of the exceptions listed in the statute. Cruz' attorney did not ask V.C. any questions about the prior incident during the trial, nor did he make an offer of proof.

The details regarding V.C.'s prior allegation of sexual abuse are unclear. Cruz' attorney asserted at the hearing on the motion in limine regarding V.C.'s and Cruz' chlamydia diagnoses that V.C.'s prior allegation "couldn't possibly have been true [because] no officer did come and cut her free" from the bed where she was tied up. However, Cruz' attorney did not elaborate on this alleged lie or offer the testimony of an officer or anyone else to support Cruz' attorney's assertion that V.C. was not freed by the police. Additionally, Cruz' attorney did not expand upon the claim that V.C.'s prior allegation was false when Cruz later opposed the State's motion in limine to exclude evidence of V.C.'s sexual history. Cruz' motion to admit evidence under § 27-412 stated that the "evidence will show that the alleged victim, V.C., has made false and/ or misleading statements [to] officials regarding her sexual behavior." Cruz did not adduce any evidence proving that V.C.'s prior claim was false or misleading. Cruz' attorney's unsupported allegations that V.C. made false statements are not an adequate offer of proof by which we can judge the competence of the evidence that Cruz claims was improperly excluded.

[9] In a similar case, the Nebraska Supreme Court excluded evidence of a victim's allegedly false prior claims of sexual assault. See *State v. Welch*, 241 Neb. 699, 490 N.W.2d 216 (1992). The court concluded the evidence was properly excluded because "the defendant made no showing at any time that any claim the victim had made concerning prior sexual assaults and familial sexual abuse was false." *Id.* at 707, 490

N.W.2d at 221. As in *Welch*, Cruz wanted to introduce evidence of an allegedly untrue prior claim of sexual abuse, but made no showing that the prior claim was, in fact, false.

We are unable to determine from the record and the context of the various hearings the substance of the evidence, who the witness would be to provide the evidence, and what was the falsehood. We cannot determine whether the exclusion of the evidence affected Cruz' substantial rights. See *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004). There was no offer of proof to overcome these deficiencies and allow us to determine whether the evidence was competent. See *State v. Earl*, 252 Neb. 127, 560 N.W.2d 491 (1997). Because Cruz failed to preserve this alleged error for our review, we express no opinion on whether the trial court correctly employed § 27-412 to exclude the alleged evidence of V.C.'s credibility.

### 3. Ineffective Assistance of Counsel

[10,11] In order to prevail on a claim for ineffective assistance of counsel, a defendant must show that his or her counsel's performance was deficient and that he or she was prejudiced by such deficiency. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). The two prongs of the ineffective assistance test, deficient performance and prejudice, may be addressed in either order. *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012).

[12] A claim of ineffective assistance of counsel need not be dismissed merely because it is made on direct appeal. *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). Rather, the determining factor is whether the record is sufficient to adequately review the question. *Id.*

Cruz asserts that his trial counsel was ineffective in four respects: (1) for failing to request a limiting instruction to prevent the jury from using evidence relating to V.C. in resolving the charges involving G.C. and vice versa, (2) for failing to move to sever the charges relating to G.C. from those relating

to V.C., (3) for failing to inquire into V.C.'s sexual history, and (4) for failing to object at the sentencing hearing based on a violation of Cruz' Fifth Amendment rights. We will address each of Cruz' allegations of ineffectiveness in turn.

### (a) Limiting Instruction

Cruz alleges his trial counsel was ineffective for failing "to request a limiting instruction that the jury could not consider the evidence of Cruz's alleged crimes against V.C. to prove the charges involving G.C., and vice versa." Brief for appellant at 34. Cruz argues that evidence of the crimes as to one victim would constitute inadmissible prior bad acts evidence as to the crimes against the other victim in violation of Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2014). The record does not reveal trial counsel's reasoning for failing to request a limiting instruction. Accordingly, the record is inadequate to allow us to address this assignment of error on direct appeal. See *McGuire, supra*.

### (b) Motion to Sever

Cruz argues that his trial counsel was ineffective for failing to move to sever the charges relating to V.C. from the charges relating to G.C. Cruz argues that "[t]he alleged crimes toward G.C. occurred separately and apart from the alleged crimes toward V.C." and joinder of the two was therefore improper. Brief for appellant at 42. This assignment of error is without merit.

[13-15] The standard for joinder of offenses is set forth in Neb. Rev. Stat. § 29-2002 (Reissue 2008). Offenses are properly joinable under § 29-2002(1) if they are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan. *State v. Rocha*, 286 Neb. 256, 836 N.W.2d 774 (2013). Whether offenses are properly joined involves a two-stage analysis in which it is determined first whether the offenses are related

and properly joinable and second whether an otherwise proper joinder was prejudicial to the defendant. *State v. Schroeder*, 279 Neb. 199, 777 N.W.2d 793 (2010).

The first question is whether the charges were properly joined. See *id.* A recent case from the Nebraska Supreme Court is illustrative. In *State v. Knutson*, 288 Neb. 823, 852 N.W.2d 307 (2014), the defendant was charged with five counts of sexual assault and child abuse for separate incidents involving four minor girls. *Id.* The defendant had taught, tutored, or coached each of the victims. *Id.* The defendant was convicted of the charges involving one of the children, but acquitted of the charges relating to the other three girls. *Id.* He alleged on appeal that the charges should have been severed. *Id.* The court disagreed, concluding that the offenses were properly joined under § 29-2002(1) because they were of the same or similar character. *Knutson, supra*. The court noted that the facts of the underlying crimes were similar in that each of the children attended the school where the defendant taught, each of the girls was around the same age when the misconduct occurred, and the defendant occupied a position of trust with respect to each of the alleged victims. *Id.*

In the case at hand, we similarly conclude that the charges involving G.C. and V.C. were of the same or similar character. As in *Knutson, supra*, the victims both had the same relationship with Cruz (father-daughter), both were of a similar age when the misconduct occurred, and with respect to both alleged victims, Cruz abused his position of trust as their father. See *id.* We conclude the charges were properly joined under § 29-2002(1).

[16,17] The next question is whether the otherwise proper joinder prejudiced Cruz. See, *Schroeder, supra*. See, also, § 29-2002(3). A defendant opposing joinder has the burden of proving prejudice. See *Knutson, supra*. The Nebraska Supreme Court has previously noted that "prejudice usually does not occur from joined charges if the evidence is sufficiently simple and distinct for the jury to easily separate

evidence of the charges during deliberations." *Id.* at 833, 852 N.W.2d at 318.

In the case at hand, the evidence for each charge was simple and distinct from the evidence of the other offenses. Moreover, the trial court specifically instructed the jury that it was to reach a separate decision with respect to each charge. Cruz has not shown that he was prejudiced by the joinder, and we therefore need not address his claim that his trial counsel's performance was deficient. See *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012). His assertion that his trial counsel was ineffective for failing to move to sever the charges is without merit.

### (c) Investigation into V.C.'s
### Sexual History

Cruz next asserts that his trial counsel was ineffective for failing to investigate V.C.'s sexual history. Cruz concedes that the record is not adequate to resolve this assignment of error on direct appeal. See *State v. McGuire*, 286 Neb. 494, 837 N.W.2d 767 (2013). We agree.

### (d) Fifth Amendment Objection
### at Sentencing

Cruz alleges that his trial counsel was ineffective for failing to object to a violation of Cruz' Fifth Amendment rights at the sentencing hearing. Cruz argues the trial court improperly based its sentences on Cruz' silence at sentencing. We find no merit to this assignment of error.

[18,19] A sentencing court has broad discretion as to the source and type of evidence and information which may be used in determining the kind and extent of the punishment to be imposed. *State v. Thomas*, 268 Neb. 570, 685 N.W.2d 69 (2004). When attempting to determine at sentencing whether the defendant is a proper candidate for probation and rehabilitation, the court, of necessity, must consider whether the defendant acknowledges his or her guilt. See *State v. Winsley*, 223 Neb. 788, 393 N.W.2d 723 (1986).

[20,21] Nebraska courts have previously held that a defendant's lack of remorse is a proper consideration in sentencing. See *State v. Moore*, 235 Neb. 955, 458 N.W.2d 232 (1990) (holding that trial court properly considered defendant's lack of remorse in determining appropriate sentence where defendant's only comment at sentencing was to deny that she had committed crime). Recently, in *State v. Cobos*, 22 Neb. App. 887, 895, 863 N.W.2d 833, 840 (2015), this court determined that "[a] defendant's failure to take responsibility for his actions is a proper factor to consider in imposing a sentence." The defendant in *Cobos* had refused to provide a statement to the probation office in conjunction with the presentence investigation. *Id.* At the sentencing, the court noted it had considered the defendant's attitude and failure to accept responsibility, among other factors, in determining the appropriate sentence. *Id.* We found no abuse of discretion. *Id.*

In this case, Cruz and his attorney both declined to speak at the sentencing hearing:

> [Court:] [D]o you have any comments you'd like to make?
>
> [Cruz' counsel]: Your Honor, . . . Cruz has asked that I not make any comment and so I would submit it to the Court, Your Honor.
>
> [Court]: . . . Cruz, is that correct, that you've asked your attorney not to make any comments?
>
> [Cruz]: That's correct.
>
> . . . .
>
> [Court]: Okay. All right then.
>
> . . . Cruz, do you have any comments that you would like to make before the Court imposes a sentence?
>
> [Cruz]: No.

Although Cruz declined to speak at the sentencing hearing, he did write a lengthy statement included in the presentence report. In the statement, Cruz denied any wrongdoing and implied that V.C. had lied about the sexual abuse:

I told [the police] it [was] not the first time [V.C.] lies, that we caught her stealing from stores, church, and has also been in trouble with the cops, that she would also come home late at night. . . .

. . . [The prosecutors] knew she had a boyfriend before the inc[i]dent, they knew she got in trouble with the cops, that she has lied in the past, they knew she[']s been out late at night.

After Cruz declined to speak at the sentencing hearing, the court proceeded to impose the sentences on Cruz. In support of its sentencing decision, the court noted that it had reviewed the presentence report. The court stated:

The report also reflects that you have denied all the allegations against you and you have not accepted any responsibility for the crimes. You place blame upon the victims and you show lack of remorse and your inability to accept any responsibility for these crimes in the Court's opinion makes you an extreme danger for continued exposure in our community.

We conclude Cruz' trial counsel was not ineffective for failing to object based on a violation of Cruz' Fifth Amendment rights. The record reveals that the court did not base its sentences on Cruz' silence at the sentencing hearing, but on his statements in the presentence report. Furthermore, the court did not abuse its discretion in considering Cruz' lack of remorse and refusal to accept responsibility as relevant factors in determining the appropriate sentences. See, *State v. Moore*, 235 Neb. 955, 458 N.W.2d 232 (1990); *State v. Cobos*, 22 Neb. App. 887, 863 N.W.2d 833 (2015). Because we conclude that Cruz' attorney did not perform deficiently, we need not reach the issue of prejudice. See *State v. Poe*, 284 Neb. 750, 822 N.W.2d 831 (2012). We find no merit to Cruz' assertion that his attorney was ineffective for failing to object based on a violation of Cruz' Fifth Amendment rights at the sentencing.

### 4. Excessive Sentences

Cruz contends he received excessive sentences for his convictions. Cruz' brief argues that "[t]he circumstances of Cruz's offenses . . . are rife with residual doubt." Brief for appellant at 49. Cruz further argues that his prior convictions are relatively minor in comparison to the charges in the present case. We conclude Cruz' sentences were not excessive.

[22,23] When imposing a sentence, a sentencing judge should consider the defendant's age, mentality, education and experience, social and cultural background, past criminal record, and motivation for the offense, as well as the nature of the offense and the violence involved in the commission of the crime. *State v. Howard*, 282 Neb. 352, 803 N.W.2d 450 (2011). Where a sentence imposed within the statutory limits is alleged on appeal to be excessive, the appellate court must determine whether the sentencing court abused its discretion in considering and applying the relevant factors as well as any applicable legal principles in determining the sentence to be imposed. *State v. Van*, 268 Neb. 814, 688 N.W.2d 600 (2004).

First degree sexual assault of a child is a Class IB felony. § 28-319.01(2). The penalty for a Class IB felony is 20 years' to life imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2014). Incest and possession of a visual depiction of sexually explicit conduct with a child as a participant are Class III felonies. § 28-703; Neb. Rev. Stat. § 28-813.01(2)(b) (Cum. Supp. 2014). The penalty for a Class III felony is 1 to 20 years' imprisonment, a $25,000 fine, or both. § 28-105. Manufacturing a visual depiction of sexually explicit conduct with a child as a participant is a Class ID felony. Neb. Rev. Stat. § 28-1463.04 (Cum. Supp. 2014). A Class ID felony is punishable by 3 to 50 years' imprisonment. § 28-105. Child abuse is a Class IIIA felony. Neb. Rev. Stat. § 28-707(4) (Cum. Supp. 2014). The penalty for a Class IIIA felony is 0 to 5 years' imprisonment, a $10,000 fine, or both. § 28-105. The sentences imposed were within these statutorily provided penalty ranges.

The trial court considered the information contained in the presentence report. The report revealed that Cruz had previous convictions for numerous traffic offenses and two alcohol-related offenses. The court noted that Cruz was 30 years old and that the victims were his own children. Although Cruz' criminal history may have been less serious than the charges in the present case, the court determined that a lengthy prison term was nevertheless appropriate due to the nature of the crimes, Cruz' lack of remorse, and the extreme danger Cruz posed to the community. In light of these factors, we cannot conclude that the court's sentences constituted an abuse of discretion. This assigned error is meritless.

## V. CONCLUSION

Upon our review, we find that there was insufficient evidence to support Cruz' convictions for attempted sexual assault of a child in the first degree and attempted incest. We reverse Cruz' convictions for attempted first degree sexual assault of a child and attempted incest and vacate his sentences for those charges. We find no merit to Cruz' other assertions on appeal. Accordingly, we affirm Cruz' convictions and sentences on the other eight charges.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.