Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
06/05/2018 09:08 AM CDT

- 1 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
26 NEBRASKA APPELLATE REPORTS
STATE v. STEPHENS
Cite as 26 Neb. App. 1

STATE OF NEBRASKA, APPELLEE, V.
CHAD N. STEPHENS, APPELLANT.
___ N.W.2d ___

Filed June 5, 2018.    No. A-17-560.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility.

2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.

3. **Convictions: Evidence: Appeal and Error.** In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

4. **Rules of Evidence: Other Acts: Intent.** No exact limitation of time can be fixed as to when other conduct tending to prove intent to commit the offense charged is remote under Neb. Rev. Stat. § 27-414(1) (Reissue 2016).

5. **Rules of Evidence: Other Acts: Time.** The question whether evidence of other conduct is too remote in time is largely within the discretion of the trial court. While remoteness in time may weaken the value of the evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence.

6. **Criminal Attempt: Intent.** A defendant's conduct rises to criminal attempt if he or she intentionally engages in conduct which, under the

circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime.

7. **Criminal Attempt.** Whether a defendant's conduct constitutes a substantial step toward the commission of a particular crime and is an attempt is generally a question of fact.

8. **Lesser-Included Offenses: Sexual Assault.** Attempted first degree sexual assault on a child is a lesser-included offense of first degree sexual assault on a child.

9. **Lesser-Included Offenses: Sexual Assault: Intent.** A finder of fact may convict of the lesser-included offense if it finds that the act of penetration was not proved beyond a reasonable doubt but also finds that a defendant intentionally engaged in conduct which, under the circumstances as the defendant believed them to be, constituted a substantial step in a course of conduct intended to culminate in first degree sexual assault.

Appeal from the District Court for Douglas County: GREGORY M. SCHATZ, Judge. Affirmed.

Robert B. Creager, of Anderson, Creager & Wittstruck, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Sarah E. Marfisi for appellee.

PIRTLE, BISHOP, and ARTERBURN, Judges.

ARTERBURN, Judge.

## INTRODUCTION

Following a bench trial, the district court for Douglas County found Chad N. Stephens guilty of attempted sexual assault of a child in the first degree. On appeal, Stephens argues that the district court improperly allowed Neb. Rev. Stat. § 27-414 (Reissue 2016) evidence and that there was insufficient evidence to support his conviction. For the reasons set forth below, we affirm.

## BACKGROUND

Stephens was married to Desiree Stephens. Desiree had a daughter from a previous relationship, C.H., born in 2000.

C.H. and Desiree began living with Stephens in 2003. C.H., who was 16 years old at the time of trial, testified to a series of contacts involving Stephens which were of concern. These contacts all occurred in the spring and summer of 2011 when C.H. was 10 years old. By that time, C.H. had two younger sisters living with the family.

The first alleged encounter C.H. testified about occurred one evening when Desiree was not in the same room as Stephens. Stephens was watching a movie in the living room at the time. Stephens asked C.H. to rub his feet, which was the first time he had asked her to do so. Stephens was sitting on the couch, and C.H. agreed. C.H. testified that she was in her pajamas at the time, but that no other contact occurred between Stephens and herself. C.H. testified that after this incident, Stephens would request foot rubs frequently. C.H. stated that this would occur both when the two were alone and when others were present in the room.

The next specific encounter described by C.H. occurred when Desiree was not home. It followed the prior foot rubbing incidents during the summer of 2011. C.H. testified that during one evening, Stephens was lying on the bed in his bedroom watching television. Stephens asked C.H. to rub his feet. C.H. stated that eventually she became positioned on her stomach, on top of Stephens, with her face toward his feet and her buttocks near Stephens' face. Stephens asked C.H. if she thought "it was hot" in the room, to which she replied, "'no.'" Stephens proceeded to remove C.H.'s pajama bottoms. C.H. stated that she did not ask Stephens to remove her pajama bottoms, nor was there any reason for him to do so. Stephens did not touch her any further on this occasion. C.H. did not tell Desiree about the alleged incident.

The next alleged incident occurred later during the summer of 2011. C.H. was walking from her bedroom to the bathroom while Stephens was in the bathroom. Stephens asked C.H. if she wanted to shower with him. C.H. stated that she went to her bedroom and kept on her bra and underwear, but covered

herself with a towel. C.H. then went into the bathroom where Stephens was located. Stephens asked if she showered with a towel on, and C.H. said, "'no.'" C.H. removed her towel, and Stephens asked if she showered with her bra and underwear on, and C.H. said, "'no.'" C.H. removed her undergarments. C.H. testified that Stephens "stared at me for, like, a long time." Stephens remained fully clothed at the time. According to C.H., Stephens did not speak to her or touch her while he stared. Eventually he said "'bye,'" at which time she left. This was the first time that Stephens had asked C.H. if she wanted to shower with him. C.H. did not tell Desiree about this alleged incident.

The final alleged incident C.H. testified to at trial occurred shortly after the previous incident. C.H. testified that she was sleeping in her bedroom when she was awoken. She noticed that her alarm clock said it was 3:14 a.m. C.H. had been sleeping on her back when she woke up and saw Stephens enter her room. She smelled a strong odor of alcohol on him. According to C.H., Stephens got into her bed with her. She stated that she turned her head away. Stephens did not say anything. She then "felt something . . . inside of [her vagina]," describing it as a painful, burning sensation. Stephens asked her if she was "okay," and C.H. did not respond.

C.H. was 16 years old at the time of trial. She testified that upon reflection, she has been able to determine that Stephens digitally penetrated her during the incident. She testified that she believed this based on the positions their bodies were in at the time. C.H. believed the incident lasted approximately 5 minutes. C.H. did not inform Desiree of this incident until her initial disclosure 2 to 3 months after the alleged penetration incident.

C.H. continued to live in the same home as Stephens for nearly 1 year following the last incident. C.H. then moved to Kansas to be with her biological father's family. During the time C.H. spent in Kansas, law enforcement interviewed her regarding allegations of sexual abuse by Stephens. Desiree

messaged C.H. and instructed her not to divulge any information to law enforcement. C.H. then moved to Oklahoma to live with her biological father's sister. She lived there for approximately 3 years. When she returned to the Omaha, Nebraska, area in September 2016, she began living with Stephens' parents, where she resided up to the time of trial. C.H. stated that she previously had a good relationship with Stephens.

Desiree testified at trial. When C.H. disclosed the incident to Desiree, Desiree immediately telephoned Stephens to confront him with the allegation. Desiree stated that Stephens initially denied any inappropriate contact with C.H. She testified that she followed up the conversation with Stephens "hundreds" of times. In a subsequent conversation the evening of C.H.'s initial disclosure, Desiree testified that Stephens told her he had been with friends the night of the alleged penetration incident. Stephens told Desiree that the children were asleep on his and Desiree's bed when he returned home. He carried each of the children to their own bed. When he carried C.H. to her bed, Stephens stated that his hand was placed near her vagina, over her underwear. Stephens stated that he laid down next to C.H. and that he did not want to move his hand from her vaginal area because he thought she would wake and it would frighten her. He asked C.H. if she was "okay." When she did not respond, he left the room.

Desiree testified that she talked to Stephens' parents about him getting treatment. She testified that she should have gone to the police with C.H.'s disclosure, but that instead, she began using methamphetamine and left home for 6 to 8 months. Desiree testified that she told C.H. to delete certain text messages before she was first interviewed by law enforcement in Kansas. Desiree stated she was trying to protect Stephens at that point. Desiree stated that her approach to the allegations changed several years later after another of her children made a disclosure.

C.H. was interviewed by a forensic interviewer at a child advocacy center in the summer of 2016. The forensic

interviewer testified that the proper protocol was utilized on the day of her interview with C.H. She testified that C.H.'s demeanor and responses were appropriate during the interview. She testified that she did not have any concerns about C.H.'s credibility during the interview. During Stephens' case, he introduced the video recording of C.H.'s interview. The district court viewed the entirety of the video.

Prior to trial, the State submitted notice that it wished to present prior sexual assault evidence pursuant to § 27-414. The district court held a hearing on the issue before trial. At the hearing, the parties stipulated to the receipt of police reports and other evidence regarding the former and current charges against Stephens and presented argument.

The evidence of Stephens' prior crime shows that in February 2003, when Stephens was 20 years old, he solicited sex from an undercover officer posing as a 14-year-old girl in an internet chat room. In particular, Stephens asked the "girl," "'Would you let me touch your body?'" He then attempted to get her to call him on his cell phone. The "girl" stopped responding to Stephens, and Stephens logged into the chat room using a different screen name and approached her again, this time representing that he was only 16 years old. Stephens then attempted to get the "girl" to agree to a meeting for the purpose of kissing, oral sex, and vaginal sex. The two agreed to meet at a grocery store at a certain time. Stephens described the vehicle he would drive. The "girl" requested that Stephens bring a condom for vaginal sex.

Officers set up surveillance at the chosen meeting place and observed Stephens' arriving in the type of vehicle he had indicated he would drive at the designated time. Officers arrested Stephens and discovered that he was carrying a single condom in his pocket. After being advised of his rights, Stephens spoke with the officers and corroborated the above information. Stephens also consented to a search of his "Yahoo Instant Messenger" accounts. Stephens provided the password for both accounts used to contact the 14-year-old "girl." The evidence

admitted at the hearing also includes a signed statement from Stephens admitting that he planned to meet the "girl" at the grocery store for the purposes of oral sex and "whatever she wanted." Stephens was initially charged with conspiracy to commit first degree sexual assault. Pursuant to a plea agreement, Stephens pled no contest to an amended information charging him with debauching a minor.

Following the hearing, the district court issued an order in which it found that as to the sexual assault charge concerning C.H., the evidence of the 2003 events was admissible under § 27-414. The district court found that clear and convincing evidence existed that Stephens conspired with an individual whom he thought was a 14-year-old girl to engage in sexual penetration. The district court further found that the evidence of the prior offense was sufficiently similar to the present offense to be probative of propensity to commit the offense against C.H., that it was not too remote in time, and that the evidence was not substantially more prejudicial than probative. Therefore, the district court ruled that the prior crimes evidence would be admissible under § 27-414. At trial, over an objection, the State offered and the district court received the above referenced evidence under § 27-414 of a prior sexual offense committed by Stephens.

Following a bench trial, the district court issued its findings and judgment from the bench. The district court stated that based upon the lack of detail about actual penetration, the court could not find that the act of penetration was proved beyond a reasonable doubt. However, the district court found that on the night Stephens entered C.H.'s bed, he engaged in conduct which constituted a substantial step in a course of conduct intended to culminate in first degree sexual assault. The district court based this finding upon the testimony of C.H., the statements made to Desiree by Stephens, and the § 27-414 evidence. The district court then found Stephens guilty of attempted sexual assault of a child in the first degree. At sentencing, the district court sentenced Stephens

to a period of incarceration of 15 to 18 years. Stephens appeals here.

## ASSIGNMENTS OF ERROR

Stephens argues that the district court erred by (1) allowing § 27-414 evidence and (2) finding him guilty because there was insufficient evidence to support his conviction.

## STANDARD OF REVIEW

[1,2] In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Hill*, 298 Neb. 675, 905 N.W.2d 668 (2018). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

[3] In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. The relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Mora*, 298 Neb. 185, 903 N.W.2d 244 (2017).

## ANALYSIS

### § 27-414 EVIDENCE

Stephens argues that the district court erred in admitting and considering evidence under § 27-414. Stephens argues that his prior conviction did not involve physical contact with any victim and was therefore too dissimilar to the alleged

crime in this matter. Additionally, Stephens argues that the prior conviction was too remote in time to be admitted under § 27-414.

Section 27-414 provides in relevant part:

(1) In a criminal case in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense or offenses of sexual assault is admissible if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses. If admissible, such evidence may be considered for its bearing on any matter to which it is relevant.

. . . .

(3) Before admitting evidence of the accused's commission of another offense or offenses of sexual assault under this section, the court shall conduct a hearing outside the presence of any jury. At the hearing, the rules of evidence shall apply and the court shall apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged.

In its written order on the State's motion to introduce § 27-414 evidence, the district court determined that there was clear and convincing evidence Stephens' 2003 conduct met the elements of conspiracy to commit sexual assault of a child in the first degree. The district court determined that although the conduct had occurred approximately 7 years prior to the charged conduct in this matter, it was not too remote in time to be excluded under § 27-414. The district court found that the 2003 conduct was similar to the current

matter as it involved the intent to vaginally penetrate a minor female, therefore demonstrating Stephens' propensity to commit the alleged crime. Finally, the district court found that the probative value of the 2003 conduct outweighed the risk of prejudice against Stephens and was therefore admissible at trial.

[4,5] Section 27-414 allows evidence of prior offenses of sexual assault to prove propensity. *State v. Valverde*, 286 Neb. 280, 835 N.W.2d 732 (2013). Section 27-414(1) explicitly provides that evidence of the accused's commission of another offense of sexual assault may be considered for its bearing on any matter to which it is relevant. *State v. Valverde, supra*. No exact limitation of time can be fixed as to when other conduct tending to prove intent to commit the offense charged is remote under § 27-414(1). *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012). The question whether evidence of other conduct is too remote in time is largely within the discretion of the trial court. While remoteness in time may weaken the value of the evidence, such remoteness does not, in and of itself, necessarily justify exclusion of the evidence. *State v. Valverde, supra*.

Based on our review of the record, we find that the district court did not abuse its discretion by admitting and considering the § 27-414 evidence. Although there was no actual victim who was touched in the 2003 case, the similarity lies in the intent displayed by Stephens. The 2003 conduct involved Stephens' conspiring with what he believed was a 14-year-old girl to engage in sexual penetration. His intent was demonstrated through his messages, his being apprehended with a condom, and his own statements. In the present case, the evidence also demonstrated a desire on Stephens' part to penetrate C.H. who was 10 years old at the time. Although the 2003 conduct occurred approximately 7 years before the charged incident, this timeframe is well within the range acceptable to prove propensity under § 27-414, particularly given the similarity of intent. See *State v. Kibbee, supra* (citing to cases

allowing admittance of prior bad acts in range of 6 to 27 years). Given the foregoing factors, we agree with the district court that the probative value of the 2003 conduct outweighed the risk of prejudice to Stephens. Therefore, we find the district court did not err in receiving the evidence of the 2003 events under § 27-414.

### SUFFICIENCY OF EVIDENCE

Stephens argues that there is insufficient evidence to convict him of attempted sexual assault of a child in the first degree. He argues that the district court properly discounted C.H.'s testimony, but improperly relied on the § 27-414 evidence and Desiree's testimony regarding his alleged statements.

[6,7] Nebraska law provides that a person commits sexual assault of a child in the first degree when he or she subjects another person under 12 years of age to sexual penetration and the actor is at least 19 years of age or older. Neb. Rev. Stat. § 28-319.01 (Reissue 2016). A defendant's conduct rises to criminal attempt if he or she intentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime. *State v. Babbitt*, 277 Neb. 327, 762 N.W.2d 58 (2009). Conduct shall not be considered a substantial step unless it is strongly corroborative of the defendant's criminal intent. See Neb. Rev. Stat. § 28-201 (Cum. Supp. 2017). Whether a defendant's conduct constitutes a substantial step toward the commission of a particular crime and is an attempt is generally a question of fact. *State v. Babbitt, supra.*

[8,9] Attempted first degree sexual assault on a child is a lesser-included offense of first degree sexual assault on a child. See *State v. James*, 265 Neb. 243, 655 N.W.2d 891 (2003). A finder of fact may convict of the lesser-included offense if it finds that the act of penetration was not proved beyond a reasonable doubt but also finds that a defendant intentionally engaged in conduct which, under the circumstances as the

defendant believed them to be, constituted a substantial step in a course of conduct intended to culminate in first degree sexual assault. See *id.*

Stephens argues that the district court erred in finding sufficient evidence to convict him of attempted sexual assault of a child in the first degree. Stephens contends that because the court found that the State failed to prove penetration, it was necessarily discounting C.H.'s testimony. He then argues that either there was a sexual assault or there was not. However, the district court explicitly gave credit to the testimony of C.H. and cited it in conjunction with the testimony of Desiree regarding Stephens' account of the event and Stephens' propensity to seek out underage females for sexual gratification in the past.

When applying our standard of review, we must view the evidence in the light most favorable to the prosecution. Having done so, we find that there was sufficient evidence adduced to support his conviction. C.H. testified to events preceding the alleged penetration that can be viewed as grooming behaviors. These events showed a pattern of behavior wherein Stephens progressively engaged in acts that indicated a sexual interest in C.H. We note that C.H. testified that she was certain that Stephens penetrated her. However, although she was steadfast that she felt pain, burning, and discomfort from Stephens' actions, she provided alternative theories over time as to whether the penetration was accomplished digitally or with Stephens' penis. She also stated that at age 10, she did not understand exactly what was going on. Her testimony demonstrated that since this incident, she had talked with Desiree and had subsequent experiences which clarified in her mind what had happened. On this record, the district court found that the evidence failed to sufficiently support a finding that Stephens actually penetrated C.H. However, it still found that Stephens took a substantial step toward doing so.

We find that a rational trier of fact could reach this conclusion. Much of the district court's analysis is based on its

assessment of the credibility of the testimony. The district court credited most of the testimony of C.H., particularly those portions that were at least in part corroborated through other testimony or evidence. The district court stopped short of crediting the testimony of C.H. regarding penetration. However, credibility determinations are for the trier of fact. We will not and do not pass on the credibility of the witnesses. *State v. Rocha*, 295 Neb. 716, 890 N.W.2d 178 (2017); *State v. Luff*, 18 Neb. App. 422, 783 N.W.2d 625 (2010). Therefore, we find that viewing the evidence in the light most favorable to the State, a rational finder of fact could have found the essential elements of attempted sexual assault of a child in the first degree beyond a reasonable doubt.

## CONCLUSION

We find that the district court did not abuse its discretion by receiving evidence under § 27-414. We further find that there was sufficient evidence to support Stephens' conviction.

AFFIRMED.