IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. ROMAN-BRITO

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

CONCEPCION A. ROMAN-BRITO, APPELLANT.

Filed September 6, 2022.    No. A-21-804.

Appeal from the District Court for Douglas County: HORACIO J. WHEELOCK, Judge. Affirmed.

Beau Finley, of Law Offices of Beau Finley, P.C., L.L.O., for appellant.

Douglas J. Peterson, Attorney General, and Jordan Osborne for appellee.

MOORE, RIEDMANN, and WELCH, Judges.

WELCH, Judge.

## INTRODUCTION

Concepcion A. Roman-Brito appeals his conviction of attempted first degree sexual assault. He contends that the evidence was insufficient to support his conviction and that the sentence imposed was excessive. For the reasons set forth herein, we affirm.

## STATEMENT OF FACTS

Roman-Brito and the victim had been in a relationship for 8 years and had three biological children together. They were unmarried but lived together with their three children and Michaelangelo, the victim's 13-year-old son from a previous relationship.

On August 18, 2019, Roman-Brito consumed alcohol during a family cookout. In the early morning hours of August 19, Roman-Brito, who was intoxicated, approached the victim numerous times requesting sex and the victim declined each time. At the time of his last request, Roman-Brito

told the victim that "you're going to do it whether you like it or not" and struggled with the victim while attempting to pull down her pants and underwear. During the struggle, the victim screamed when her underwear was ripped. Roman-Brito stopped struggling with the victim when Michaelangelo entered the room. As a result of the incident, Roman-Brito was charged with attempted first degree sexual assault and a jury trial was held thereon.

During the trial, the victim, whose primary language is Spanish, was assisted by an interpreter. The victim testified that on August 18, 2019, Roman-Brito was drinking alcohol and became intoxicated. At approximately 1 or 2 a.m. on August 19, Roman-Brito entered the victim's bedroom. The victim stated that Roman-Brito "was drunk, he was mad. He wanted to have sexual relations with me. I said, no, because he was really drunk and that he should go to sleep because it was late and the kids needed to go to school in the morning, but he didn't listen."

After the victim refused Roman-Brito's advances, he "started taking the blanket off of me in bed, he started saying things to me like that I'm cheating on him. . . . He started saying really strong words to me like you're a whore." The victim and Roman-Brito struggled with each other with the victim telling him that she did not want to have sex and to "stop yelling and stop arguing because the kids were sleeping." After Roman-Brito told her that "if I wasn't going to have sex with him then I needed to leave the room," she slept on the couch with one of the children. Roman-Brito came to the living room to again look for the victim to have sex and stated "you're going to do it whether you like it or not." Roman-Brito began struggling with the victim "trying to take a blanket off." The victim, who testified that she was scared of Roman-Brito at that time, "was telling him to stop, telling him to go to bed, to stop yelling, for him to leave, that I didn't want him there." Roman-Brito, who was wearing only boxers, removed the blanket that covered the victim, grabbed the victim's pants, and pulled her underwear halfway down the victim's leg which caused her underwear to tear and exposed her genital area. Roman-Brito demanded to have sex with the victim while the victim continued to resist him. As a result of these actions, the victim yelled and Michaelangelo entered the living room and turned on the lights. When Michaelangelo appeared, Roman-Brito stopped his physical contact with the victim which allowed the victim to pull up the blanket to cover herself and pull up her underwear and pants. The victim then called 911. Both the victim's 911 call and the victim's torn underwear were received into evidence.

Later in the day on August 19, 2021, the victim was interviewed at the Woman's Center for Advancement (WCA). The WCA helps victims of domestic violence and domestic abuse navigate through the legal system and assists victims with moving forward in their lives. Omaha police officer Nathan Wilson testified that he met with the victim at WCA and that she looked "very fearful" during his initial contact with her. Although Wilson testified that the victim did not have any visible injuries, in his experience, victims of sexual assault do not always present with visible injuries. During her interview at WCA, the victim identified her assailant.

Michaelangelo testified that he heard the victim and Roman-Brito arguing and that the victim sounded "mad," "sad," and "a little scared." Michaelangelo stated that, after he heard the victim scream, he left his bedroom to go to the living room and check on her. When he entered the living room, Michaelangelo stated that he saw the victim trying to hold up her ripped pants and underwear and she was on the phone with 911.

The jury convicted Roman-Brito of the charged offense. Following the preparation of a presentence investigation report, the sentencing hearing was held in September 2021. At the sentencing hearing, before imposing sentence, the district court stated that

> in fashioning this sentence I have considered your age, your mentality, your education and experience, your social and cultural background, your past criminal record, your motivation for the offense, the nature of the offense and the level of violence involved in the commission of the offense. Let it be clear to you, sir, whether you're from Mexico, the United States of America or any other foreign country, when a person says no, no means no. No does not give you the authority to take somebody's underwear and try to take it off. She pled with you and said no to you for hours. No means no, sir.
>
> The Court takes this matter extremely seriously. The Court has reviewed the victim impact statement, which is a part of the presentence investigation report.

The court went on to read a portion of the victim impact statement including her fear of being in a new relationship and of remaining alone due to her trauma. The victim expressed that Roman-Brito's actions "created a barrier for me to be able to trust again." The court sentenced Roman-Brito to 4 to 6 years' imprisonment with credit for 53 days served. Roman-Brito has timely appealed and is represented by the same counsel that represented him during the trial and sentencing.

## ASSIGNMENTS OF ERROR

Roman-Brito contends that the evidence was insufficient to support his conviction and that the sentence imposed was excessive.

## STANDARD OF REVIEW

In reviewing a criminal conviction for a sufficiency of the evidence claim, whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022). The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id*.

A sentence imposed within the statutory limits will not be disturbed on appeal in the absence of an abuse of discretion by the trial court. *Id*.

## ANALYSIS

### INSUFFICIENCY OF EVIDENCE

Roman-Brito's first assignment of error is that the evidence was insufficient to support his conviction. He contends that "none of the testimony or evidence at trial provided proof beyond a reasonable doubt that [Roman-Brito] took a substantial step to commit first-degree sexual assault." Brief for appellant at 11.

Roman-Brito was convicted of attempted first degree sexual assault in violation of Neb. Rev. Stat. § 28-201(1) and (4)(b) (Reissue 2016) (criminal attempt; conduct; penalties) and Neb. Rev. Stat. § 28-319 (Reissue 2016) (first degree sexual assault; penalty). According to § 28-201:

> (1) A person shall be guilty of an attempt to commit a crime if he or she:
>
> (a) Intentionally engages in conduct which would constitute the crime if the attendant circumstances were as he or she believes them to be; or
>
> (b) Intentionally engages in conduct which, under the circumstances as he or she believes them to be, constitutes a substantial step in a course of conduct intended to culminate in his or her commission of the crime.

"Conduct shall not be considered a substantial step under this section unless it is strongly corroborative of the defendant's criminal intent." § 28-201(3). Whether a defendant's conduct constitutes a substantial step toward the commission of a particular crime and is an attempt is generally a question of fact. *State v. Babbitt,* 277 Neb. 327, 762 N.W.2d 58 (2009); *State v. Stephens*, 26 Neb. App. 1, 915 N.W.2d 828 (2018).

In *State v. Hemmer,* 3 Neb. App. 769, 775-76, 531 N.W.2d 559, 564 (1995), this court stated:

> [W]here a particular result is an element of the underlying crime, § 28-201(1)(a) and (b) requires that the actor intend such result for a conviction of criminal attempt. In other words, it must be the actor's conscious object to cause such result. Under § 28-201(2), however, the actor can be convicted of criminal attempt if he *knows* that his conduct will produce the result. In other words, the actor can be convicted of attempt if he is aware of the high probability that such result will occur, even if he does not intend such result.

A person commits the offense of first degree sexual assault, inter alia, if the person subjected the victim to sexual penetration without the consent of the victim. See § 28-319 (1)(a). Neb. Rev. Stat. § 28-318(8) (Reissue 2016) provides that "without consent" means:

> (a)(i) The victim was compelled to submit due to the use of force or threat of force or coercion, or (ii) the victim expressed a lack of consent through words, or (iii) the victim expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;
>
> (b) The victim need only resist, either verbally or physically, so as to make the victim's refusal to consent genuine and real and so as to reasonably make known to the actor the victim's refusal to consent; and
>
> (c) A victim need not resist verbally or physically where it would be useless or futile to do so[.]

Although § 28-319 was amended in 2019 and 2020, the definition of "without consent" remained unchanged. See Neb. Rev. Stat. § 28-318 (Supp. 2019) and (Cum. Supp. 2020).

"To commit the crime of attempted sexual assault in any degree, actual sexual penetration or sexual contact between the victim and the defendant is not required." *State v. Jackson*, 225 Neb.

843, 852, 408 N.W.2d 720, 727 (1987), *overruled on other grounds, State v. Garza*, 236 Neb. 202, 459 N.W.2d 739 (1990). "[O]ne may commit *attempted* first degree sexual assault without ever having made sexual contact but by merely taking a substantial step toward sexual contact." *State v. Swoopes*, 223 Neb. 914, 922, 395 N.W.2d 500, 506 (1986), *overruled and reinstated on other grounds, State v. Jackson, supra*, and *State v. Garza, supra.*

Here, the evidence viewed in the light most favorable to the State established that Roman-Brito repeatedly expressed that he wanted to have sexual intercourse with the victim and the victim repeatedly refused. During Roman-Brito's forcible partial removal of the victim's clothing, the victim's underwear was ripped and her genitalia was exposed. Roman-Brito also told the victim that "you're going to do it whether you like it or not." It was only after the victim screamed and Michaelangelo entered the living room that Roman-Brito stopped. In sum, this evidence, when viewed in the light most favorable to the State, establishes that a rational trier of fact could have found that Roman-Brito's conduct satisfied the essential elements of attempted first degree sexual assault in violation of § 28-201(1)(a) and § 28-319(1)(a). Stated differently, based upon the evidence in this record, a reasonable trier of fact could have found that Roman-Brito intentionally engaged in conduct which, under the circumstances as he believed them to be, constituted a substantial step in a course of conduct intended to culminate in his commission of the crime of attempted first degree sexual assault. In furtherance of this holding, we reject Roman-Brito's argument that the victim's claims were not supported by corroborating evidence, because Nebraska law is clear that "[t]he testimony of a person who is a victim of a sexual assault as defined in sections 28-319 to 28-320.01 shall not require corroboration." Neb. Rev. Stat. § 29-2028 (Reissue 2016). This assignment of error fails.

EXCESSIVE SENTENCE

Roman-Brito's next assignment of error is that the sentence imposed was excessive. Roman-Brito was convicted of a Class IIA felony and was sentenced to 4 to 6 years' imprisonment. See, § 28-201(4)(b) (criminal attempt; conduct; penalties); § 28-319 (first degree sexual assault; penalty). This sentence is within the statutory sentencing range for Class IIA felonies which are punishable by a minimum of no imprisonment and a maximum of 20 years' imprisonment. See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2020) (felonies; classification of penalties). Roman-Brito acknowledges that his sentence was within the statutory limits but contends that the district court did not sufficiently consider his social and cultural background, his work ethic, limited criminal history, and his issues with alcohol. He further contends that the district court's failure to sentence him to probation "demonstrates its failure to fully review [Roman-Brito's] limited criminal past and issues with drinking." Brief for appellant at 17.

The sentencing court is not limited to any mathematically applied set of factors, but the appropriateness of the sentence is necessarily a subjective judgment that includes the sentencing judge's observations of the defendant's demeanor and attitude and all the facts and circumstances surrounding the defendant's life. When imposing a sentence, the sentencing judge should consider the defendant's (1) age, (2) mentality, (3) education and experience, (4) social and cultural background, (5) past criminal record or record of law-abiding conduct, and (6) motivation for the

offense, as well as (7) the nature of the offense, and (8) the amount of violence involved in the commission of the crime. *State v. Miller*, 312 Neb. 17, 978 N.W.2d 19 (2022).

Here, the record establishes that the district court considered the relevant factors in imposing Roman-Brito's sentence all of which were included in the PSR. See Neb. Rev. Stat. § 29-2261 (Cum. Supp. 2020) (presentence investigation report shall include circumstances of crime, offender's history of delinquency and criminality, physical and mental condition, family situation and background, economic status, education, occupation, personal habits, and any other relevant matters). That report reflected that Roman-Brito was 43 years old, single, with three dependents. He had been employed and provided for his family. His criminal history includes two convictions for driving under the influence. He was previously sentenced to a term of probation which was revoked and a jail sentence imposed. The level of service/case management inventory assessed Roman-Brito as a high level to reoffend. The probation officer completing the PSR stated that Roman-Brito minimized his issues with alcohol and "his criminal culpability in this docket before the court." The PSR indicates that the current offense was committed while Roman-Brito was under the influence of alcohol. In her victim's impact statement, the victim wrote she remains emotionally traumatized and has become afraid to become involved in future relationships but is also afraid of ending up alone due to her trauma from Roman-Brito's offense against her.

Based upon factors including that the sentence imposed was within the statutory sentencing range, his high risk to reoffend, the nature of the offense, his previous failure at probation, the emotional harm caused to the victim, and Roman-Brito's failure to accept responsibility for the offense, the sentence imposed by the district court did not constitute an abuse of discretion. This assignment of error fails.

## CONCLUSION

Having considered and rejected Roman-Brito's assigned errors, we affirm his conviction and sentence.

AFFIRMED.